United States District Court
District of Massachusetts

```
                                )
PEOPLES FEDERAL SAVINGS BANK,    )
        Plaintiff,               )
                                )
        v.                       )    Civil Action No.
                                )    10-11002-NMG
PEOPLE'S UNITED BANK,            )
        Defendant.               )
                                )
```

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from a trademark dispute between plaintiff Peoples Federal Savings Bank ("Peoples Federal") and defendant Peoples United Bank ("Peoples United"). Peoples Federal objects to the rebranding by Peoples United of several recently-acquired banks in Eastern Massachusetts with the latter's mark. Before the Court is plaintiff's motion for a preliminary injunction.

**I. Factual Background**

The following facts are as alleged in the complaint, plaintiff's motion in support of preliminary injunction, defendant's opposition that to motion and plaintiff's reply thereto (each with various accompanying exhibits).

Peoples Federal is a community bank that operates exclusively in Eastern Massachusetts. It was chartered in 1888 and became a federally insured savings and loan institution in 1937. Its headquarters are in Brighton but it has grown steadily

-1-

over the years and now operates branches in Allston, Brookline, Jamaica Plain, Norwood and West Roxbury. It has a loan portfolio of approximately $375 million and assets of over $500 million.

Peoples Federal began using the term "Peoples" in its name and service marks in 1937 and is the only continuous user of the PEOPLES mark for banking services in Eastern Massachusetts since that time. It owns six Massachusetts registrations for its marks, including PEOPLES, PEOPLES FEDERAL and PEOPLES FEDERAL SAVINGS BANK, but those registrations were not granted until June 15, 2010, the day plaintiff filed the instant suit. It promotes those marks through considerable advertising and marketing efforts, involvement in community activities and charitable giving. Through its dedication to personal service, high profile and community involvement, it has attracted the media and been portrayed favorably in the press.

Defendant Peoples United Bank was founded in 1842 in Bridgeport, Connecticut. It has used the word "People" in its name for approximately 80 years. Until 2007, it was called "Peoples Bank" but because it planned to expand beyond Connecticut, it changed its name to "Peoples United Bank" to distinguish itself from other banks that also used the word "People" in their titles. Peoples United asserts that it is the only bank in the country that uses that particular name.

On April 16, 2010, Peoples United acquired from the Federal

-2-

Deposit Insurance Corporation ("FDIC") the deposits and banking operations of the failed Butler Bank, which had branches in north central Massachusetts, and Butler Bank's subsidiary, Marlborough Cooperative, which had branches in Marlborough (collectively, "Butler"). On the following day, Peoples United began rebranding all former Butler branches and re-opened them under its own name, Peoples United Bank. Specifically, it covered the exterior signage at the branches of the acquired banks and replaced them with signs bearing the name "Peoples United Bank". It also replaced the failed banks' interior posters and brochures with the Peoples United name and logo. Butler's failure, the first of a Massachusetts bank in 16 years, was covered prominently in the press, as was Peoples United's acquisition of its operations and rebranding of its branches.

## II.  Procedural History

On June 15, 2010, Peoples Federal filed suit against Peoples United alleging trademark infringement, trademark dilution and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), as well as violations of Massachusetts statutory and common law. Then, one month later, Peoples Federal moved for a preliminary injunction and temporary restraining order to stop Peoples' United from rebranding the Butler branches, and any other bank branches it might acquire in Eastern Massachusetts, with People United's name, logo or other Peoples-formative marks.

-3-

Because plaintiff asserted that the rebranding was to occur
on July 19, 2010, the Court convened an emergency hearing on
Friday, July 16, 2010. Counsel for both parties attended the
hearing, although, at that time, defendant had not yet responded
to plaintiff's motion. At the hearing, defendant's counsel
informed the Court that Peoples United had already rebranded the
former Butler branches and that it would not take any further
action in the immediate future. He also explained that the July
19, 2010, date was based on a misunderstanding and that Peoples
United had no plans to execute any further rebranding on that
date. Satisfied that the status quo would be maintained, the
Court scheduled a status conference and motion hearing for
Thursday, July 29, 2010.

At the July 29, 2010, hearing, the Court announced its
preliminary findings and invited argument from the parties.
Since that hearing, plaintiff has submitted a notice bringing to
the Court's attention a recent case involving a trademark dispute
between two banks in Pennsylvania, Alliance Bank v. New Century
Bank, 2010 U.S. Dist. LEXIS 76747 (E.D. Pa. July 27, 2010), which
the defendant has persuasively argued is distinguishable from
this case. Having thoroughly considered the parties' written
submissions and oral arguments, the Court now announces its
ruling.

-4-

## III. Legal Analysis

### A.   Standard of Review

To obtain preliminary injunctive relief under Fed. R. Civ.

P. 65, a movant must demonstrate

> (1) a substantial likelihood of success on the merits,
> (2) a significant risk of irreparable harm if the
> injunction is withheld, (3) a favorable balance of
> hardships and (4) a fit (or lack of friction) between
> the injunction and the public interest.

Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)

(citation omitted).  Likelihood of success on the merits is the

critical factor in the analysis and, accordingly, a strong

likelihood of success may overcome a "somewhat less" showing of

another element.   See  Weaver v. Henderson, 984 F.2d 11, 12 (1st

Cir. 1993) (citations omitted); E.E.O.C. v. Astra United States,

Inc., 94 F.3d 738 (1st Cir. 1996).

In trademark cases, the first factor plays an even greater

role because resolution of the other three factors will depend,

in large part, on whether the plaintiff is likely to succeed in

establishing infringement.   Borinquen Biscuit Corp. v. M.V.

Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006).   This focus on

likelihood of success is consistent with the idea that, "as a

matter of public policy, trademarks should be protected against

infringing uses."   Id.

**B.   Application**

### 1.   Likelihood of Success on the Merits

To succeed on a claim of trademark infringement, Peoples

Federal must demonstrate that 1) it owns a protectable mark and

2) Peoples United's use of that mark will likely result in

consumer confusion.   15 U.S.C. § 1125(a); <u>Borinquen Biscuit</u>, 443

F.3d at 116.

### a.   Protectability of the PEOPLES mark

To be eligible for trademark protection, a mark must qualify

as distinctive.   <u>Two Pesos, Inc.</u> v. <u>Taco Cabana, Inc.</u>, 505 U.S.

763, 769 (1992).   In assessing a mark's distinctiveness, courts

employ a taxonomy that classifies marks along a spectrum of

categories that includes generic, descriptive, suggestive,

arbitrary and fanciful marks.   <u>Id.</u> at 768.   Generic marks, which

fall at the low end of the spectrum, are terms that identify a

product but do not distinguish its source, such as "pizza,"

"store" or "car."   Such terms, by definition, are never afforded

trademark protection.   At the other end of the spectrum are

suggestive, arbitrary and fanciful marks which, because they

identify the particular source of the product, are considered

"inherently distinctive" and enjoy automatic trademark

protection.   <u>Id.</u>   Falling in the middle are descriptive marks

which convey an "immediate idea of the ingredients, qualities or

characteristics of the good" but "are not inherently capable of

serving as source-identifiers." <u>Boston Duck Tours, LP</u> v. <u>Super Duck Tours, LLC</u>, 531 F.3d 1, 13 (1st Cir. 2008) (internal citation omitted). Descriptive marks are entitled to protection only if they have acquired distinctiveness or secondary meaning. <u>Id.</u>

Both registered and unregistered trademarks are eligible' for protection against infringing uses. <u>Borinquen Biscuit</u>, 443 F.3d at 117; <u>see</u> 15 U.S.C. §§ 1114, 1125. When a party seeks protection for an unregistered mark, it is incumbent on it to demonstrate that the mark is distinctive, either inherently or through acquired secondary meaning. <u>Boston Beer Co.</u> v. <u>Slesar Bros. Brewing Co.</u>, 9 F.3d 175, 180 (1st Cir. 2008). When a trademark is registered, however, the party's burden is reduced. Because registration of a mark serves as "prima facie evidence" of its validity, the mark enjoys a presumption of inherent distinctiveness. <u>Equine Techs., Inc.</u> v. <u>Equitechnology, Inc.</u>, 68 F.3d 542, 545 (1st Cir. 1995). That presumption, however, may be rebutted by proof that the mark is merely generic or that it is descriptive and lacks secondary meaning. <u>Calamari Fisheries, Inc.</u> v. <u>The Village Catch</u>, 698 F. Supp. 994, 1007 (D. Mass. 1988).

Plaintiff asserts that its PEOPLES mark deserves a presumption of protectability by virtue of its six Massachusetts registrations and continuous use of the mark since 1937. It

-7-

reasons that it is a "senior user" of the mark and may enforce it against Peoples United which has only recently moved into Eastern Massachusetts.

Plaintiff's claim is illusory for several reasons.  As defendant points out, a closer examination of plaintiff's Massachusetts service mark applications reveals that the majority of them were not filed until June 15, 2010, the same day plaintiff filed the instant suit and two months after Peoples United had begun the re-branding of the former Butler branches. Moreover, four other banks in Eastern Massachusetts have used marks which include the word "People".  Although those banks were not located in the same neighborhoods as the Peoples Federal branches (which are primarily in Suffolk County), and have since dissolved or changed names, their use of the mark casts doubt on its inherent distinctiveness.  Furthermore, another bank of similar name, PeoplesBank, which has operated as a local bank in Western Massachusetts since 1885, also has a Massachusetts registration for a mark which includes the word "Peoples" and substantially outdates Peoples Federal's recent, litigation-driven registrations.[1]

---

[1] PeoplesBank is currently involved in a trademark dispute with Peoples United in the District of Connecticut, Peoples United Bank v. PeoplesBank, No. 08-cv-01858 (Dist. Conn. filed Dec. 8, 2008), wherein PeoplesBank sought to enjoin Peoples United from using its name in certain parts of Western Massachusetts.  After a six-day evidentiary hearing, Judge Dorsey denied the injunctive relief, finding that Peoplesbank had not

Although evidence of a state registration generally presumes
a registrant's "exclusive right to use the registered mark" in
the Commonwealth, M.G.L. C. 110H § 5(b), the force of that
presumption is blunted in this case where 1) the registration was
not filed until the same day the plaintiff filed suit against
Peoples United and after Peoples United had begun its rebranding
process in Massachusetts and 2) another Massachusetts bank had
already registered a mark that includes the dominant word
"Peoples". Such facts belie plaintiff's claim that it may
presumptively enforce the PEOPLES mark against Peoples United
throughout Eastern Massachusetts.

Thus, because the PEOPLES mark is not entitled to a
presumption of inherent distinctiveness, the Court must place it
on the continuum of categories described earlier. Plaintiff
contends that, even independent of its Massachusetts
registrations, the PEOPLES mark is inherently distinctive because
the word "Peoples" is unrelated to banking services and requires
"imagination, thought and perception to reach a conclusion as to
the nature of the [services]." Equine Techs., 68 F.3d at 544.
In support of that argument, plaintiff relies heavily on Commerce
Bank & Trust Co. v. TD Banknorth, Inc., in which Judge Dennis
Saylor of this Court found that the mark "COMMERCE BANK" was

---

demonstrated a likelihood of consumer confusion. See 2010 WL
2521069 (D. Conn. June 17, 2010).

suggestive because it "is intended to create an image of a bank
that promotes commerce." 554 F. Supp. 2d 77, 84 (D. Mass. 2008).

Although perhaps a close call, the PEOPLES mark is properly
classified as descriptive rather than suggestive because it does
not require a stretch of imagination to associate it with banking
services. In Commerce Bank, Judge Saylor opined that, unlike
"Commerce," words such as "Community", "National" and "Mutual"
are "descriptive of a specific characteristic" of a banking
institution. Id. Similarly, the term "Peoples" is a
straightforward way to describe a bank as "people-oriented". In
fact, the FDIC's website indicates that "people" ranks as the
12th most commonly used word in bank names, appearing in the
names of 159 banks across the country. See
http://www2.fdic.gov/idasp/. Such frequent use of the term
"People" in connection with banking services supports a finding
that the mark is descriptive. See Labrador Software, Inc. v.
Lycos, Inc., 32 F. Supp. 2d 31, 33 (D. Mass. 1999) (in
categorizing a mark, "it is proper to take notice of the extent
to which it has been used .. by others in the same field"). Not
surprisingly, in the lawsuit in Connecticut involving Peoples
United and PeoplesBank (discussed supra, note 1), Judge Dorsey
reached the same conclusion. PeoplesBank, 2010 WL 2521069, at *4
(D. Conn. June 17, 2010) ("Defendant's mark [PEOPLES BANK] falls
in the descriptive category"). Thus, on this point, the Court

-10-

has company with respect to its holding.

Having determined that the PEOPLES mark is descriptive, it is entitled to protection only if it has acquired a secondary meaning. Secondary meaning refers to a term's "ability to tell the public that ... it denotes a product or service that comes from a particular source." DeCosta v. Viacom International, Inc., 981 F.2d 602, 606 (1st Cir. 1992). Generally, a name has acquired secondary meaning when a "significant quantity of the consuming public understand the name as referring to the appropriate party." Boston Beer, 9 F.3d 175 at 181 (citing President & Trustees of Colby College v. Colby College-New Hampshire, 508 F.2d 804, 807 (1st Cir. 1975)).

Generally, a demonstration of secondary meaning "entails vigorous evidentiary requirements". Boston Beer, 9 F.3d at 181 (internal citation omitted). Courts consider various factors, including 1) the length and manner of the term's exclusive use, 2) the size and prominence of plaintiff's enterprise, 3) the nature and extent of advertising of the mark 4) evidence of successful product sales and 5) efforts at promoting a conscious connection, in the public's mind, between the mark and the particular product. Id. at 182; Calamari Fisheries, 698 F. Supp. at 1008. Although the only direct evidence of secondary meaning is consumer surveys and testimony, courts may draw inferences based on circumstantial evidence of the aforementioned factors.

-11-

Boston Beer, 9 F.3d at 182.

Here, plaintiff asserts that it spends $325,000 annually to promote its banking services through, inter alia, radio, TV and print advertising, marketing literature, sponsorship of sports teams and other community organizations and distribution of promotional items. It also contends that it maintains a prominent and well-respected profile in the region through its charitable contributions, civic involvement and personalized banking practices.

Plaintiff attributes its commercial success, in part, to the recognition of its marks. It has increased its customer base steadily over the years, expanded from one to six branches and currently has a loan portfolio of over $375 million and assets of over $500 million. It recently conducted a successful Initial Public Offering ("IPO") and is now publicly traded on NASDAQ by the symbol PEOP.

Although Peoples Federal has grown and plans to open new branches in Suffolk, Middlesex and Norfolk counties, it has not demonstrated that a "substantial portion of the consuming public" in those areas recognizes the PEOPLES mark. Plaintiff's advertising efforts and community involvement has been significant but highly localized within the Boston City limits and nearby urban area. Moreover, although plaintiff has advertised in the Boston Globe and on radio stations that

-12-

broadcast to the greater Boston area, its other media outlets are local Boston community newspapers.

Although plaintiff has demonstrated that its mark has acquired secondary meaning within the specific neighborhoods in which it has branches, it has not made the necessary showing beyond those areas. Accordingly, its mark is enforceable within Allston/Brighton, Brookline, Jamaica Plain, Norwood and West Roxbury areas but not throughout all of Eastern Massachusetts or even the rest of Middlesex, Suffolk and Norfolk counties.

### b.   Likelihood of Confusion

Having determined that plaintiff's mark deserves some degree of protection, the next element in the infringement analysis is likelihood of confusion. In making such an assessment, courts consider eight factors: 1) similarity of the marks, 2) similarity of the services, 3) relationship between the parties' channels of trade, 4) relationship between the parties' advertising, 5) classes of prospective purchasers, 6) evidence of actual confusion, 7) defendant's intent in adopting its mark and 8) strength of the plaintiff's mark. Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657 F.2d 482, 487 (1st Cir. 1981). This is a considerable burden and a plaintiff alleging trademark infringement must show not just a "possibility of confusion" but rather a "substantial likelihood of confusion." Bear Republic Brewing Co. v. Central City Brewing Co., 2010 WL 2330411, at *5

-13-

(D. Mass. June 7, 2010).

Plaintiff alleges that defendant's rebranding of its newly acquired Massachusetts branches will cause both "forward" and "reverse" confusion. Forward confusion, which forms the basis of most Lanham Act claims, occurs where a smaller, junior user diverts a senior user's customers and "free rides" off the senior user's existing reputation and good will. Commerce Bank, 544 F. Supp. 2d at 83. Reverse confusion, on the other hand, occurs when a larger or well-established, junior user enters a new market and threatens to overwhelm a smaller, senior user. See Attrezzi, LLC V. Maytag Corp., 436 F.3d 32, 38-39 (1st Cir. 2006); Commerce Bank, 554 F. Supp. 2d at 83. In this regard, plaintiff asserts that because defendant is approximately 40 times its size, it can easily out-advertise and out-spend it but whether the case is construed as one of forward or reverse confusion, the consumer confusion analysis is the same. See Attrezzi, 436 F.3d at 39; Commerce Bank 554 F. Supp. 2d at 83.

### i. Similarity of Marks

When assessing the similarity of two marks, the Court considers the "sight, sound and meaning" of the marks. Boustany v. Boston Dental Group. Inc., 42 F. Supp. 2d 100, 107 (D. Mass. 1999). The determination should be a holistic one, taking into account the "total effect" of each mark, rather than comparing their "individual features". Id.; Pignons, 657 F.2d at 487.

Here, plaintiff asserts that the "dominant portions" of the parties' marks are virtually identical and, accordingly, any small differences in the composite marks (i.e., the words "bank," "federal," or "united") or in the logos are inconsequential.

Plaintiff exaggerates the marks' similarities. Although both banks' marks include the word "Peoples" (and are often abbreviated as such), there are important differences between the marks. Notably, plaintiff's mark lacks the word "United," which forms an essential part of the defendant's mark and is an important identifier of Peoples United Bank.

Moreover, the parties' respective logos differ considerably. Peoples Federal uses a green color scheme with a yellow horizontal line separating "Peoples" (the dominant part of its slogan) from "Federal Savings Bank"). Peoples United, on the other hand, uses a red and blue color scheme wherein the words "Peoples" and "United" are the same size and font and are encircled by a red orbit icon. Those differences are substantial and undoubtedly help customers distinguish between the two banks, thus decreasing the chance of confusion. Compare Peoplesbank, 2010 WL 2521069, at * 5 (where visual differences in the banks' slogans helped customers differentiate among them); with Commerce Bank, 554 F. Supp. at 85 (where banks' logos were strikingly similar). Thus, although the banks' marks contain the same dominant word, the visual differences in their logos neutralizes

-15-

this factor.

### ii.  Similarity of the Services

The parties offer essentially identical retail and commercial banking services, such as mortgages and savings and checking accounts.  Thus, this factor weighs in the plaintiff's favor.

### iii. Similarity of Advertising, Channels of Trade and Prospective Customers

Similarities of advertising, channels of trade and prospective customers are generally considered together.  See Pignons, 657 F.2d at 488.  Plaintiff contends that both banks market to the same kinds of retail and commercial consumers and, although Peoples United is a much larger bank, its individual branches operate at the community banking level.  Moreover, plaintiff insists that Butler, the local bank recently acquired by the Peoples United, was a direct competitor of Peoples Federal.  Defendant maintains, however, that the two banks have very different profiles.  Whereas Peoples Federal emphasizes its identity as a small, neighborhood bank, Peoples United highlights its strength as a large, regional bank with numerous branches throughout New England.

With respect to the parties' prospective customers, plaintiff maintains that its typical customers are blue collar workers, families or small business owners.  Because its clients are not "sophisticated" banking customers or financial service

-16-

professionals, plaintiff reasons that they cannot be expected to investigate carefully the identities of the two banks and, accordingly, are more likely to be confused by their marks.

Plaintiff's argument underestimates the level of care and sophistication that customers use when choosing a bank. Opening a bank account or choosing a mortgagee is not an "impulse purchase". To the contrary, customers ordinarily gather information before choosing a bank and make their decision based on substantive factors (other than a bank's name). See PeoplesBank, 2010 WL 2521069, at *8. Because prospective bank clients exercise a relatively high degree of care, they are more likely to recognize the difference between the banks. Id.; see also First Nat'l Bank in Sioux Falls v. First National Bank, S.D., 153 F.3d 885, 889-90 (8th Cir. 1998) ("[C]onsumers tend to exercise a relatively high level of care in selecting banking services"); Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank, 592 N.W. 321, 332 (Iowa 1999) (no "ordinary consumer would be misled in banking decisions simply because two banks in the area have similar names"). Thus, even if the two banks attract similar clientele, the likelihood of confusion is minimal, particularly because the banks do not operate branches in the same neighborhoods. Thus, the balance of these three factors tips slightly in the defendant's favor.

### iv. Evidence of Actual Confusion

Evidence of actual confusion is often the "best possible evidence" of future confusion but is not indispensable to the proof of trademark infringement. Borinquen Biscuit, 443 F.3d at 120. Plaintiff cites several instances of confusion stemming from a Boston Globe article discussing a merger between Peoples United and RiverBank, which operates branches in Essex County. Several days after the story appeared, a fellow rotary club member asked Peoples Federal's President and CEO, Thomas Leetch ("Leetch"), if Peoples Federal was purchasing RiverBank. Leetch also reports that he received a phone call from a billboard vendor who, during his sales pitch, stated that he thought he had read that Peoples Federal was acquiring Riverbank but that he may have been "confusing [Peoples Federal] with another ... bank." Notably, neither of the reported incidents involved confusion among current or prospective customers. Contra Commerce Bank, 554 F. Supp. 2d at 86 (where, following a merger announcement in the Boston Globe involving the defendant-bank, plaintiff received numerous phone calls and emails from customers asking if they could begin depositing their paychecks at the new branches).

The paucity of evidence of actual consumer confusion is understandable given that Peoples United entered Eastern Massachusetts only a few months ago. As other courts have noted, proof of actual confusion is less salient when the relevant

-18-

products or services have only coexisted in the market for a short period of time.  See id. (two years of product coexistence is not long enough to expect actual confusion); TriMark USA, Inc. v. Performance Food Group, LLC, 667 F. Supp. 2d 155, 167 (D. Mass. 2009) (finding lack of evidence of consumer confusion irrelevant where logos had only coexisted for several months). Therefore, the scarcity of such evidence is not in itself dispositive of plaintiff's claim.

### v.   Defendant's Intent in Adopting Mark

Plaintiff has presented no compelling evidence that the defendant acted in bad faith by adopting the mark "Peoples United Bank".  To the contrary, Peoples United has used the word "Peoples" in its name for decades and asserts that its decision to change its name from "Peoples Bank" to "Peoples United Bank" aimed to avoid, rather than create, confusion in the marketplace. With respect to defendants' rebranding of the acquired Butler branches with the Peoples United logo, that action is consistent with standard practice in FDIC-assisted acquisitions.  See Isaac Decl. ¶¶ 8-10.  Thus, because the Court perceives no intent by Peoples United to get a free ride off the good will of plaintiff's mark or to confuse prospective customers, this factor weighs in defendant's favor.

### vi.  Strength of the Marks

Plaintiff contends that its mark is strong because of its

-19-

long and continuous use in Eastern Massachusetts as well as its commercial success, community involvement and advertising efforts. As discussed above, however, the conceptual strength of the PEOPLES mark is belied by the fact that 159 banks elsewhere around the country use that mark and many coexist in the same market areas. Although the PEOPLES mark has developed a secondary meaning in the specific neighborhoods in which Peoples Federal operates, the term is a common one in the banking industry as a whole. Accordingly, because the mark lacks inherent conceptual strength, this factor tilts in favor of People's United.

In sum, the balance of the Pignons factors, particularly the dissimilarity between the parties' logos, consumers' tendency to perform research before selecting a bank, the absence of bad faith and the scarcity of evidence of actual confusion, weighs against a finding of likelihood of consumer confusion. Thus, at least at this stage of the proceedings, the plaintiff has not adequately demonstrated that it is likely to succeed on the merits of its trademark claim. If, however, evidence is elicited that 1) defendant is deliberately encroaching into the specific neighborhoods in which plaintiff operates and/or promotes itself as "Peoples" (rather than "Peoples United") in an effort to divert plaintiff's customer base and 2) defendant's actions have caused actual confusion among plaintiff's clientele, the Court

-20-

would entertain a renewed motion for injunctive relief.

### 2.   Irreparable Harm

In the context of trademark litigation, irreparable harm is generally presumed if a plaintiff demonstrates a likelihood of consumer confusion.  See Commerce Bank, 554 F. Supp. 2d at 87. Given, however, that plaintiff has failed to make such a showing, it is not at risk of continuing and irreparable harm. Additionally, the fact that Peoples United has been using its name to operate the former Butler branches for more than three months with scant evidence of consumer confusion (or even the plaintiff's awareness until recently), suggests that harm is neither imminent nor irreparable.

### 3.   Balance of the Equities

Because plaintiff has not shown either a likelihood of success on the merits or irreparable harm, the balance of the equities naturally favors the defendant.

### 4.   Public Interest

Plaintiff has not demonstrated that the public interest will be furthered by entering an injunction.  Although the public interest is served by preventing consumer confusion, see Calamari Fisheries, 698 F. Supp. at 1015, the likelihood of such confusion has not been adequately demonstrated.

## ORDER

In accordance with the foregoing, plaintiff's motion for preliminary injunction (Docket No. 5) is **DENIED** without prejudice.

**So ordered.**

_Nathaniel M. Gorton_
Nathaniel M. Gorton
United States District Judge

Dated August 9 , 2010